**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| Plaintiff | * | |
| **v.** | * | Criminal No. **PJM 10-0127** |
| | * | |
| **DANIEL MCRAE** | * | |
| | * | |
| Defendant | * | |

**<u>MEMORANDUM OPINION</u>**

Daniel McRae has filed a Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A), ECF No. 123, the Government has responded in Opposition, ECF No. 127, and McRae has replied, ECF No. 130. For the reasons set forth below, the Court **GRANTS** the Motion.

**I.**

On March 22, 2010, following a Grand Jury indictment, McRae was charged with one count of bank robbery in violation of 18 U.S.C. § 2113(a). ECF No. 1. On April 25, 2012, he pleaded guilty to the charge and waived his right to appeal any sentence less than 188 months. ECF Nos. 57 and 58. The Court scheduled sentencing for September 18, 2012 and ordered a Presentence Report ("PSR"). ECF No. 60.

McRae's PSR designated him as a career offender because his criminal history included at least two felony crimes of violence: (1) Robbery With a Deadly Weapon (Circuit Court for Prince George's County, No. CT001931X); (2) Second Degree Assault (Circuit Court for Montgomery County, No. 91851C); and (3) Second Degree Burglary (Circuit Court for Montgomery County, No. 105205C). ECF No. 74. Based on a total offense level of 29 due to his designation as a career offender, and with a criminal history category of VI, McRae's Sentencing Guideline range was 151 to 188 months of imprisonment. *Id.*

McRae requested, and the Court granted, a number of continuances prior to sentencing in order to file and litigate Petitions for Writs of Error *Coram Nobis* in state court with respect to his three predicate convictions. In addition, whether Second Degree Assault qualified as a felony crime of violence was under review in this Circuit.

Nonetheless, at McRae's sentencing hearing on January 7, 2013, all three predicate convictions remained in effect and all were classified as felony crimes of violence. McRae did not challenge the applicability of the career offender enhancement. Instead, he argued that a sentence of 120 months imprisonment was sufficient considering his personal history and characteristics. ECF No. 83. The Government, however, argued that a high-end sentence was appropriate because of McRae's extensive criminal history. *Id.* This Court imposed a sentence of 169 months, in the middle of the Guideline range reasoning, at least in part, that McRae's pattern of serious misconduct warranted a sentence that would ensure that, upon release, he would be too elderly to present a safety risk. *Id.*

Thereafter, on June 10, 2013, the Circuit Court for Montgomery County entered an order vacating McRae's conviction for Second Degree Burglary. ECF No. 92-1.

On June 24, 2013—despite having waived his right to appeal any sentence less than 188 months—McRae appealed his sentence in the present case, arguing that the sentence was unreasonable considering his age, history of trauma, and medical condition. Again, McRae did not challenge his designation as a career offender. On August 21, 2013, his appeal was dismissed on the ground that he had waived his right to appeal the sentence of 169 months. ECF No. 88.

On October 1, 2013, the Fourth Circuit issued its decision in *United States v. Royal* which, pursuant to *Descamps v. United States*, 133 S. Ct. 2276 (2013), held that Maryland's Second Degree Assault no longer qualified as a predicate felony under the Armed Career Criminal Act, 18

U.S.C. § 924(e)(1) (the "ACCA"). 731 F.3d 333 (4th Cir. 2013).

On November 7, 2013, McRae filed a Motion for Writ of Habeas Corpus under 28 U.S.C. § 2255 seeking to vacate his sentence of 169 months. ECF No. 91. On July 31, 2015, this Court denied McRae's motion because (1) he did not challenge his career offender designation at sentencing or on direct appeal and, therefore, procedurally defaulted his claim, and (2) guideline errors, including those newly recognized under *Descamps*, typically are not cognizable on collateral review. ECF Nos. 106 and 107. The Court also declined to issue a Certificate of Appealability, and McRae did not file an appeal. *Id.*

On February 29, 2016, the Office of the Federal Public Defender notified Judge Blake that McRae was one of 459 defendants it had identified as possibly being eligible for relief under 28 U.S.C. § 2255 on the grounds that the new rule of constitutional law announced in *Johnson v. United States*, 576 U.S. 591 (2015), held to apply retroactively to cases on collateral review by *Welch v. United States*, 136 S. Ct. 1257 (2016), might apply to his case. ECF No. 108. Judge Blake agreed and appointed the Federal Public Defender to assist McRae in preparing a second § 2255 proceeding. *Id.*

McRae then filed a motion pursuant to 28 U.S.C. §§ 2244, 2255(h) in the Fourth Circuit Court of Appeals for authorization to file a second or successive § 2255 motion. ECF No. 110. On June 20, 2016, the Fourth Circuit granted him authorization, *id.*, and on June 21, 2016, he filed a second Motion for Writ of Habeas Corpus under 28 U.S.C. § 2255, ECF No. 111. However, on March 6, 2017, the Supreme Court held in *Beckles v. United States*, 137 S. Ct. 886 (2017) that *Johnson* does not apply to the Sentencing Guidelines, including U.S.S.G. § 4B1.2(a)(2) because, unlike the ACCA, the Guidelines are advisory only. Thus, challenges under § 2255 to sentences imposed under the Guidelines are not subject to *Johnson* challenges. As such, the Court denied

– 3 –

McRae's motion on September 25, 2017. ECF Nos. 113 and 114.

On November 18, 2019, McRae filed a Motion for Elderly Home Detention Release asking to be released pursuant to the Elderly Home Detention Release program due to his age and his medical conditions. ECF No. 116. The Government responded on December 24, 2019, arguing that the Bureau of Prisons has sole discretion to determine which inmates are eligible for the program, and consequently, the Court lacks jurisdiction to grant McRae's Motion. ECF No. 118. McRae filed a second Motion for Elderly Home Detention Release on March 30, 2020. ECF No. 120.

However, on April 17, 2020, the Federal Public Defender entered an appearance in this case and on May 28, 2020, filed a Motion for Compassionate Release on behalf of McRae. ECF No. 123. The Government responded on June 11, 2020, ECF No. 127, and McRae, through counsel, replied on June 16, 2020. ECF No. 130. The Motion is now ripe for the Court's consideration.

## II.

Until recently, courts lacked authority to entertain compassionate release requests of defendants except upon motion of the Director of the Bureau of Prisons. *See, e.g.*, *United States v. Fletcher*, 2014 WL 12824234 (D. Md. Apr. 14, 2014). However, the 2018 First Step Act, among other things, amended § 3582(c) so as to allow courts to consider compassionate release "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30

days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

If a defendant has exhausted his administrative remedies, a court "may reduce the term of imprisonment… after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that… (i) extraordinary and compelling reasons warrant such a reduction." *Id.* The defendant generally bears the burden of establishing that a sentence reduction is warranted. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013); *United States v. Riley*, 2020 WL 3034843, at *5 (D. Md. June 4, 2020); *United States v. Edwards*, 2020 WL 1650406, at *3 (W.D. Va. Apr. 2, 2020); *United States v. Stowe*, 2019 WL 4673725 at *2 (S.D. Tex. Sept. 25, 2019).

In 28 U.S.C. § 994(t), Congress delegated to the U.S. Sentencing Commission the authority to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." In U.S.S.G. § 1B1.13, the Sentencing Commission provided examples of "extraordinary and compelling reasons" and mandated that the defendant must also not present "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" and that the reduction must be otherwise consistent with U.S.S.G. § 1B1.13.

III.

Before a court evaluates the merits of the motion, the defendant must demonstrate that he or she has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). McRae filed such a request with the warden on March 30, 2020, and 30 days have lapsed. ECF No. 125-

1. As such, McRae has exhausted his administrative remedies.

The Court considers, then, whether McRae has demonstrated "extraordinary and compelling reasons" for relief under 18 U.S.C. § 3582(c)(1)(A). The Government argues that McRae has not demonstrated "extraordinary and compelling reasons," as defined in U.S.S.G. § 1B1.13. While McRae originally conceded that his circumstances are not "extraordinary and compelling" as defined in U.S.S.G. § 1B1.13, he claims that the Court is not constrained by the definitions set forth in U.S.S.G. § 1B1.13 and may conduct its own assessment of whether "extraordinary and compelling" reasons exist.

U.S.S.G. § 1B1.13 has not been updated since the passage of the First Step Act. *See United States v. Gagne*, 2020 WL 1640152, at *2 (D. Conn. Apr. 2, 2020). For example, it states that a court may reduce a term of imprisonment only "[u]pon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A)," which is clearly inconsistent with the current language of 18 U.S.C. § 3582(c)(1)(A), which allows the defendant to file a motion as well. Further, "cabining the application of § 3582 to the scenarios set forth in the commentary accompanying U.S.S.G. § 1B1.13 is contrary to the [First Step Act], which Congress enacted to remove the BOP as the gatekeeper of compassionate release." *Wise v. United States*, 2020 WL 2614816, at *5 (D. Md. May 22, 2020). As such, courts across the country, including this Court, have held that a district court has independent discretion to determine the "extraordinary and compelling reasons" that warrant a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A). *See, e.g.*, *United States v. Decator*, 2020 WL 1676219, at *3 (D. Md. Apr. 6, 2020) (stating that while "Sentencing Commission and BOP criteria remain helpful guidance, the amended § 3582(c)(1)(A)(i) vests courts with independent discretion to determine whether there are 'extraordinary and compelling reasons' to reduce a sentence"); *see also United States v. Mel*, 2020 WL 2041674, at *3 (D. Md.

– 6 –

Apr. 28, 2020); *United States v. Morrison*, 2020 WL 3447757, at *3 (D. Md. June 24, 2020);*United States v. Gutman*, 2020 WL 2467435, at *2 (D. Md. May 13, 2020);  *United States v. Redd*, 2020 WL 1248493, at *8 (E.D. Va. Mar. 16, 2020).

The Court is in accord with the judges of this district, its own holding in *United States v. Barringer*, 2020 WL 2557035, at *1 (D. Md. May 19, 2020), and many courts nationwide that, in light of the passage of the First Step Act, U.S.S.G. § 1B1.13 and BOP criteria are "helpful guidance," but that a court has independent discretion to determine whether there are "extraordinary and compelling reasons" for release.  The Court is also in accord with the judges of this district and many courts nationwide that given the difficulties of social distancing while incarcerated and the spread of COVID-19 in BOP facilities during the current COVID-19 pandemic, defendants may present "extraordinary and compelling reasons" for release if they have a serious medical problem that places them at high risk for complications if they contract COVID-19. *See, e.g.*, *Morrison*,  2020 WL 3447757, at *4; *United States v. Riley*, 2020 WL 3034843, at *6 (D. Md. June 4, 2020); *Wise*, 2020 WL 2614816 at *7.

McRae next argues that his age, 62, and medical conditions make him particularly vulnerable to COVID-19. McRae has "uncontrolled aggressive" hypertension and Chronic Kidney Disease Stage 3B. ECF No. 125-3. He also recently had emergency surgery on his airway after have difficulties breathing because his throat prosthesis, implanted after being stabbed in the throat years ago, had become dislodged and was blocking his airway. *Id.* He argues that these factors constitute "extraordinary and compelling reasons" for release.

The Government disagrees, arguing that the CDC has identified certain factors that make an individual more susceptible to severe illness from COVID-19, and submitting that McRae has none of these risk factors. The relevant factors are: being 65 years and older, having serious heart

conditions, including pulmonary hypertension, and having chronic kidney disease being treated with dialysis. *Centers for Disease Control, "Groups at Higher Risk for Severe Illness,"* available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html, (accessed June 11, 2020).  However, as McRae points out, the CDC has very recently updated its guidelines and now identifies anyone with chronic kidney disease as being at increased risk of severe illness from COVID-19. *Centers for Disease Control, "Groups at Higher Risk for Severe Illness,"* available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html, (accessed June 26, 2020). McRae even argues that under the Department of Justice's own policy, he is now eligible for compassionate release under U.S.S.G. § 1B1.13 because he presents a risk factor identified by the CDC that poses an increased risk of severe illness from COVID-19.

The Court also determines independently that McRae has demonstrated "extraordinary and compelling reasons" for release based on his age, health problems, and the threat of COVID-19. McRae has hypertension and Stage 3 Chronic Kidney Disease, both of which make him more susceptible to severe illness from COVID-19. As already noted, the CDC now identifies chronic kidney disease as a risk factor, and courts have noted that hypertension is a risk factor as well. *See e.g.*, *Gutman*, 2020 WL 2467435, at *2 (finding that that a defendant who suffered from multiple sclerosis and hypertension had demonstrated "extraordinary and compelling reasons" for release, noting that "50% of all adults hospitalized in the United States for COVID-19 suffered from hypertension."). Though there are no current cases of COVID-19 and eight documented cases total at Federal Correctional Institute Cumberland, where McRae is incarcerated, the Court recognizes that the  COVID-19 pandemic is far from over, given the rapidly rising number of cases in the country. As such, the risk of COVID-19 rapidly spreading in BOP facilities is still present.

As such, regardless of the avenue taken, McRae has demonstrated "extraordinary and compelling reasons" for release pursuant to 18 U.S.C. § 3582(c)(1)(A).

V.

Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), the Court must also take into account the factors outlined in 18 U.S.C. § 3553(a). Those factors include (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) "the need for the sentence imposed;" and (3) "the kinds of sentences available." 18 U.S.C. § 3553(a).

McRae's offense that led to his conviction involved robbing a bank by approaching a bank teller, passing her a note indicating he was robbing the bank, demanding large bills, and pretending to have a gun. ECF No. 74. McRae left the bank with $8,150, but the robbery was witnessed by another teller and captured on bank surveillance footage. *Id.* McRae's wife, who worked for the bank, identified the individual as McRae when provided with surveillance photo of the individual who robbed the bank, which led to his arrest. *Id.*

McRae argues that while his bank robbery was serious, it did not involve weapons or violence. The Government argues that his actions still made the bank teller feel threatened as if he were holding a gun, but then seemingly concedes that McRae does not have "a propensity for physical violence."

The Court agrees that despite his lengthy criminal record, McRae does not appear to have a serious propensity for violence. Setting aside the second-degree burglary charge, which was vacated, convictions on McRae's record include: (1) robbery with a deadly weapon, where he brandished a pocket knife while stealing four cartons of cigarettes; (2) second degree assault and theft, where he stole a box containing 13 cartons of cigarettes while threatening the store employee with a flashlight that he claimed was a gun; (3) passing a bad check; and (4) theft. ECF No. 74.

– 9 –

All of these convictions occurred when McRae was in his 40s, at a time when he was dealing with drug issues. *Id.* and ECF No. 83. As McRae submits, a major rationale behind the Court's sentence was the belief that when McRae finished the sentence, he would be too old to commit new offenses. Further, McRae also states, although with no supporting documentation, that he has had no incident reports and no "violence or fights" on his record, and that he has completed the Challenge Program and acted as a Challenge Program Mentor. ECF No. 125-1. He adds that he has a stable family life, with a wife and two kids, one of whom is a police officer. Given his health issues, his age, the fact that his past crimes were mostly limited to a period of time when he had issues with drugs, and the support he has from his family, the Court does not believe him to be a danger to the community.

McRae also argues that if he were to be sentenced for the same offense today, the Court would be unlikely to impose the same 169-month sentence. McRae was designated a career offender, resulting in a total offense level of 29 as determined under U.S.S.G. § 4B1.1(b), based on three prior convictions deemed felony crimes of violence (1) Robbery With a Deadly Weapon; (2) Second Degree Assault; and (3) Second Degree Burglary. McRae submits that because his conviction for Second Degree Burglary was vacated by the Circuit Court for Montgomery County, and the Fourth Circuit has ruled that Maryland's Second Degree Assault no longer qualifies as a predicate felony under the ACCA, he would not have been designated as a career offender and would have faced a Guidelines range of 63 to 78 months' incarceration instead of the 151 to 188 months' incarceration he faced in 2013 as a career offender.

In support of this argument, McRae cites Judge Hollander's recent decision in *United States v. Gary Kess, Jr.*, ELH-14-480. In *Kess*, Judge Hollander found that the fact that the Defendant would not have been considered a career offender had he been sentenced today, after

the Fourth Circuit found that one of the predicate offenses was not a "controlled substance offense" for purposes of U.S.S.G. § 4B1.1(b), was relevant in considering the § 3553(a) factors. *Id.*

This case however differs from Judge Hollander's case. The Fourth Circuit held in *Royal* that Maryland Second Degree Assault is not a "violent felony" under the ACCA, but did not hold that Maryland Second Degree Assault is not a "crime of violence" under the Sentencing Guidelines. As the Court has already described, in *Beckles v. United States*, 137 S. Ct. 886 (2017), the Supreme Court found that advisory Guidelines are not subject to *Johnson* challenges. However, the issue before the Court now is not whether McRae can challenge his designation as a career offender—it is whether the Court finds that had he been sentenced today, he would have been facing a much lower Sentencing Guidelines range, and whether the Court should take that factor into account when considering the § 3553 factors. The Court notes that career offender section in the Sentencing Guidelines defines "crime of violence" by tracking the ACCA's definition of "violent felony" with only slight modifications. *See United States v. King*, 673 F.3d 274, 279 n.3 (4th Cir. 2012) (observing that the two terms "have been defined in a manner that is 'substantively identical'") (citation omitted)). Today, the relevant clause is defined identically. *Compare* U.S.S.G. § 4B1.2 with 18 U.S.C.§ 924. Judge Hollander, in different opinion, noted in dicta that "It is true that second-degree assault under Maryland law is no longer regarded as a crime of violence, and is no longer a predicate for career offender status." *Edmonds v. United States*, 2018 WL 4700197, at *3 (D. Md. Sept. 30, 2018). As such, it is very likely that had McRae been sentenced today, he would have faced a much lower Sentencing Guidelines range than what he had faced in 2013.

Last, as previously mentioned, McRae has served 110 months in prison. This would represent 65% of his total sentence, or 77% of his sentence if good conduct credits are factored in.

The Court finds that the sentence he has already served reflects the seriousness of the offense, promotes respect for the law, and provides just punishment.

In sum, the Court finds that the 18 U.S.C. § 3553(a) factors weigh in favor of granting McRae's motion.

V.

Taking all the foregoing into account, the Court concludes that McRae has demonstrated "extraordinary and compelling reasons" for release and that the 18 U.S.C. § 3553(a) factors also weigh in favor of release. Accordingly, McRae's Motion for Compassionate Release, ECF No. 123, is **GRANTED**.

A separate Order will **ISSUE**.

                          <strong>/s/</strong>                    <br><strong>PETER J. MESSITTE</strong><br><strong>UNITED STATES DISTRICT JUDGE</strong>

**July 7, 2020**